```
              IN THE UNITED STATES DISTRICT COURT
               FOR THE SOUTHERN DISTRICT OF OHIO
                         EASTERN DIVISION


Robert C. Kennedy,              :

        Plaintiff,              :

    v.                          :   Case No. 2:06-cv-0975

                                :   JUDGE WATSON
Cingular Wireless, LLC, et al.,     MAGISTRATE JUDGE KEMP
                                :
        Defendants.
```

                               ORDER

    This employment discrimination case is before the Court to consider a motion to compel discovery filed by defendants Cingular Wireless, LLC, and David Cupp (collectively referred to as "Cingular").  In that motion, Cingular asks the Court to order plaintiff, Robert C. Kennedy, to sign medical releases which would permit Cingular to obtain records from any health care providers by whom he has been treated.  Although the motion does not specify a time frame, the Court concludes from the two discovery requests propounded which Cingular cites in its motion and its reply memorandum that the records sought span the time frame from February 16, 2006 to the present.  Mr. Kennedy has opposed the motion, and a reply memorandum has also been filed.  For the following reasons, the specific relief requested by Cingular in its motion will be denied.  However, the Court will direct Mr. Kennedy to provide additional and more responsive information to interrogatory No. 6 and will recommend that the parties consult further to determine whether there are records which, if properly requested by Cingular, would be discoverable under guiding principles which have previously been adopted by this Court in Hawkins v. Anheuser Busch, Case No. 2:05-cv-688 (S.D. Ohio August 22, 2006).

I.

Because the Court's disposition of the motion to compel turns largely upon the interpretation of the two discovery requests at issue, it is important to repeat those requests in full. In the memorandum supporting its motion to compel, Cingular cited only to interrogatory No. 6 of its set of interrogatories, noting that the issue of medical authorizations came about as a result of correspondence prompted by Mr. Kennedy's answer to that interrogatory. Interrogatory No. 6 reads in full as follows:

> For each physician, mental health professional and/or health care provider who examined you and/or provided treatment or consultation to you for physical, mental, or emotional conditions since February 16, 2006, state the dates on which that individual examined and/or provided treatment or consultation to you, and the nature of the examination, treatment, or consultation.

In its reply memorandum, Cingular cites additionally to its seventh document request. That document request reads in full as follows:

> To the extent that you claim or intend to claim mental anguish, emotional distress and damages, all documents which relate or pertain to any medical treatment obtained or sought by you as a result of your termination from employment with Cingular, including but not limited to all records, reports, notes, memoranda, correspondence, test results, invoices, bills, patient files, and prescriptions from any psychiatrists, psychologists, physician, therapist, social worker, counselor, pharmacist, or other health care provider.

Mr. Kennedy responded to interrogatory No. 6 by objecting but, without waiving the objection, stating that he "has not sought medical treatment for any physical, mental, emotional or

psychological injury, condition, disability or symptom caused by his employment or termination of employment with Defendants." In response to document request No. 7, he responded that he did not possess any documents responsive to that request.

The gist of the disagreement between the parties appears to be the extent of Mr. Kennedy's claim for non-economic damages and particularly whether one component of that claim is emotional distress.  Although Mr. Kennedy conceded that he will be requesting the jury to award him non-economic compensatory damages in this case and that his request will conclude damages due to the "humiliation" of being terminated for an allegedly unlawful reason, he asserts that he will not be claiming that he developed any diagnosable emotional condition as a result of the termination.   He also denies that he will describe to the jury any emotionally-based symptoms which he has suffered (such as insomnia, weight loss, nervousness, anxiety, or similar matters) as a result of his termination.  Because he is limiting his damage claim in this way, he contends that there are both no medical documents which would reflect treatment for any emotional injury caused by his termination and that any medical records relating to other conditions are not relevant to his claim.

II.

The Court first evaluates the answer which Mr. Kennedy gave to request for production No. 7.  That document request did not ask for documents relating to medical treatment which he obtained for any reason after the date of his termination from Cingular, but rather records of treatment "obtained or sought by you as a result of your termination from employment...." Accepting Mr. Kennedy's representations in his memorandum, as well as his response to the document request, as true there are no such documents.  He apparently has not sought treatment for

any symptoms attributed to the termination of his employment. Thus, the Court cannot compel him to produce any records of such treatment.

Interrogatory No. 6 is not, however, as limited as document request #7. That interrogatory asked Mr. Kennedy to provide information about any health care provider who examined him or provided treatment or consultation to him for any type of condition since February 16, 2006. It is not limited to treatment which Mr. Kennedy might have sought for emotional damage or distress resulting from the termination of his employment. Therefore, his answer to the interrogatory to the effect that he has not sought treatment for any symptoms caused by the termination of employment is not directly responsive. Rather, there remains the issue of whether information about medical treatment he received after February 16, 2006 for other reasons may be relevant to his claim for economic damages.

It is entirely clear that information about such treatment is relevant. In the Hawkins decision, the cases cited therein, and case law cited by the parties, the general principle emerges that if a plaintiff in an employment case is seeking "garden variety" damages for emotional distress caused by the termination of employment, medical records which might tend to show other stressors in the life of the plaintiff at or about the same time and which could account for some or all of the emotional suffering which the plaintiff has undergone are discoverable. Even one of the cases relied upon by Mr. Kennedy, EEOC v. Consolidated Realty, 2007 U.S. Dist. LEXIS 36384 (D.Nev. May 17, 2007) so holds. There, the Court noted that even a garden variety claim for emotional damages made relevant either treatments relating directly to the emotional or mental condition caused by the termination or treatments "that may reveal other conditions or stressors that caused a mental or

4

emotional distress or illness allegedly resulting from defendant's wrongful conduct." Id. at 2. If it were clear Mr. Kennedy were making a garden variety claim for emotional distress, the information called for by interrogatory No. 6 would be relevant. Consequently, records of any treatment for either a physical or emotional condition which, while unrelated to the termination of employment, might also be causing him some stress that would be of the same general nature as stress caused by the termination of his employment, would also be relevant. In such a situation, the Court would ordinarily direct the parties to work out a procedure for identifying the type of treatment provided and allowing the parties to share sufficient information so that an intelligent discussion could be had as to whether Mr. Kennedy suffered from physical or psychological conditions which could reasonably be expected to cause some type of emotional distress. The parties would then be directed to discuss ways in which the treatment records could be produced (either on an attorneys-eyes-only basis or to the Court for *in camera* inspection) so that relevant information could be disclosed and the defendants would be in a position properly to rebut any claim of emotional distress.

   The complicating factor in this case is that there is language in Mr. Kennedy's response to the motion to compel which suggests that he may not be making even a garden variety claim for emotional distress. At page nine of his responsive memorandum, he states that "Plaintiff's claim for compensatory damages need not include, and in fact does not include, a claim for damages to compensate him for any physical, mental, emotional, or psychological injury, condition, disability or symptom caused by defendants." He then states on page ten of the same memorandum that he "seeks compensatory damages for the emotional distress that normally accompanies a wrongful

5

discharge, such as humiliation and loss of earning potential." He later qualifies each of these statements by indicating that his emotional distress will not be supported by any evidence "beyond that normally accompanying wrongful termination."

If Mr. Kennedy were to limit his testimony at trial on this issue to the fact that he felt embarrassed or humiliated by his allegedly wrongful termination, and he was willing to stipulate that such embarrassment or humiliation did not continue for any significant period of time beyond the date of termination or cause him any type of emotional distress thereafter, a cogent argument could be made that any other stressors present in his life, whether revealed in records of medical treatment or elsewhere, are completely irrelevant. On the hand, if he is making a more traditional claim for emotional injury which would include testimony or evidence, either direct or indirect, which would permit the jury to award damages for some type of ongoing consequences from the humiliation or embarrassment or distress caused by the termination, then he would be making what the courts have described as a "garden variety" claim, which would, in turn, make the presence of other stressors in his life discoverable. At this point, because Mr. Kennedy's memorandum is somewhat ambiguous as to the true extent of his claim for either garden variety emotional distress or short-lived humiliation and embarrassment, the Court must assume he is making the former type of claim. Thus, the principles from <u>Hawkins</u> do apply and Cingular is entitled to some additional discovery.

### III.

Based upon the foregoing, the motion to compel (#27) is granted in part as follows. If plaintiff is actually seeking "garden variety" emotional distress damages in this case, he shall provide a further response to interrogatory No. 6

identifying any health care providers from whom he has sought treatment after February 16, 2006, as requested in the interrogatory, whether or not such treatment was for any condition or symptom allegedly caused by the termination of his employment. The information provided shall be sufficiently detailed to permit the parties to have a reasoned discussion as to whether the condition for which treatment was sought is the type of condition which may have caused some type of emotional distress which could account, in part, for any of the emotional distress which Mr. Kennedy attributes to the termination of his employment. If the parties cannot agree on a procedure by which such records will be made available to Cingular's counsel for an attorneys-eyes-only inspection, they shall contact the Court to determine whether *in camera* review of any records would be appropriate. At this time, however, no order will be entered compelling either the production of additional documents in response to requests No. 7 (because Mr. Kennedy has represented that no such documents exist) or an order compelling Mr. Kennedy to sign medical releases to permit Cingular to obtain all of his treatment records on or after February 16, 2006.

Any party may, within ten (10) days after this Order is filed, file and serve on the opposing party a motion for reconsideration by a District Judge. 28 U.S.C. §636(b)(1)(A), Rule 72(a), Fed. R. Civ. P.; Eastern Division Order No. 91-3, pt. I., F., 5. The motion must specifically designate the order or part in question and the basis for any objection. Responses to objections are due ten days after objections are filed and replies by the objecting party are due seven days thereafter. The District Judge, upon consideration of the motion, shall set aside any part of this Order found to be clearly erroneous or contrary to law.

This order is in full force and effect, notwithstanding the

filing of any objections, unless stayed by the Magistrate Judge or District Judge.   S.D. Ohio L.R. 72.4.


                                                  /s/ Terence P. Kemp
                                                  United States Magistrate Judge